last case for argument on today's calendar, and that is Carmichael v. Chappius. Do we have counsel on the line? Yes, Your Honor, Joseph Nersey. Okay, Mr. Nersey, good morning. And do we have Ms. Morse for appellate? Yes, Your Honor, thank you. Okay, great. All right, so Mr. Nersey, you reserve two minutes for rebuttal, and we'll give you the first three minutes without interruption, so you may proceed. Thank you, Your Honor. May it please the court. Four times during jury selection at Brian Carmichael's trial, his attorney raised a batch of objection that the prosecution was striking African-American jurors based upon their race. And the raw numbers in a number of themselves in this case were quite stark. And all four times, the trial court told counsel that to make a prontofacial case, he had to present more than numbers. He needed to present other facts and circumstances showing that the prosecution strikes were based on race. And each of these four times, counsel failed to present any further information. In fact, on the fourth time, stated basically an exasperation, I don't know what else I can present besides numbers. And had counsel been aware of the controlling law, counsel would have known that he had much more he could have presented in this case. Four of the six African-American jurors that were struck by the prosecution had stated in their examination a prototypical pro-prosecution position, that being that they had close friends or family members who were members of law enforcement. And in the state post-conviction proceeding, the trial counsel gave an unrebutted sworn statement that he did not realize that at stage one of the batch of inquiry that he had to make anything more than a statistical showing. And of course, had counsel known the applicable law, he would have seen that he had a substantial showing of other facts and circumstances. In its decision on the performance prong, counsel of the Strickland ineffective assistance inquiry, the state appellate division specifically declined to rule on performance. The state trial court in the post-conviction proceeding did rule that the performance, that the counsel's performance was not ineffective. But the state appellate division was not. You have one more minute. Thank you. The state appellate division was not silent on the performance prong. Rather, it specifically declined to rule on the performance prong, saying regardless of whether counsel should have made a more detailed attempt to establish a prima facie case of discrimination pursuant to BATS. And then went on to discuss the prejudice prong. And the prejudice prong ended its analysis. This is on page 31 of my brief. And it's in the special appendix to page 20. It says in any event, defendant has not shown that any BATS in violation resulted in an unfair jury. That analysis of prejudice by the state appellate division is an unreasonable application of clearly established federal law. The prejudice prong, the appellate division on ineffective assistance to counsel based on excuse me, I believe my time is now set for questioning. If you have 30 seconds, that's fine. If you can wrap up that point, that's fine. Okay. The prejudice prong on BATS is one of structural error. Any discrimination in the racial discrimination in the composition of a trial jury is fundamental. It goes to the structural integrity of the trial and cannot be tolerated. And never has it been a portion of the prejudice prong to have to show that the violation actually resulted in an unfair jury. And of course, it would be an impossible showing to make because the 12 people actually sat, they made it through examination on that they could sit fairly and unbiasedly. So it would be impossible to ever show that it resulted in an unfair jury. But the jury selection process and the trial is fundamentally flawed because the structural error, if there's any racial discrimination at all in the selection of the trial jury. All right. Let's pause for some questions. Judge Winter, do you have any questions for Mr. Hershey? My only question is I thought that our prior decision held that there was no prima facie case. The prior decision was based on the district court's finding that New York used a standard in Batson that was contrary to Supreme Court law. And this court found that it was not contrary to clearly established federal law as termed by the Supreme Court. And the ineffective assistance issue was not before the court in the first decision. So the court in the first decision never had before it the impact on the Batson proceeding on the failure of the trial attorney to present the additional facts and circumstances. In fact, this court in the original decision dealing only with the raw numbers said that the court could not say that had it been the trial court or the state appellate court, it would not have found that there was a Batson violation because the numbers were very strong in this case. But this court was not reviewing the fact that the trial counsel had more than numbers to present. Trial counsel had indications that the African-American jurors being struck by the prosecutor had stated prototypical pro-prosecution position in that they had close friends and relatives who were members of law enforcement. And that almost assuredly would have carried the prima facie case over the line and in fact would create a reasonable probability that the Batson hearing would have prevailed because there was nothing in the record that otherwise indicated that those jurors were people the prosecution wouldn't want other than because of their race. Okay, thank you. Judge Winter, do you have any questions? Judge Wesley, do you mean? I'm sorry, Judge Wesley. That's okay, the emissions are close. Does it strike you as odd, counsel, that I mean as far as Judge Winter's concern, and I'm not certain I quite agree with you, the first time we had this case, Judge Cabranes' decision of reverse judge failures, prior determination that there was a, that the appellate division had applied Batson incorrectly, didn't it? Because the appellate division recognized that Brown said that numbers could be enough, but it would be unusual for that to happen. And so it said, the appellate division said, well, numbers could be enough, but we don't have to decide that because in any event, there's no Batson violation here, or that the jury was fair. It was not an unfair jury. And Judge Farrell said, well, no, the statistics show here that this was a systematic exclusion of blacks. Isn't that what Judge Farrell found? Judge Farrell, the district court in the original decision found that the New York Court of Appeals in the Brown standard created a standard for proving the promulgation case that was more strict than the standard set by the Supreme Court of the United States. I'll go back and look at her decision and Judge Cabranes' characterization of that. I don't think that that's what they did. What my understanding of it was, is that she recognized that there was room in Brown for understanding that it was not an unreasonable application of Batson, because Brown specifically says numbers can be enough. It says it's unusual, but numbers can be enough. And that's why the Batson requires, somebody disagrees with that. But then she went ahead and said, but the appellate division was wrong. This clearly was a systematic exclusion, which by the way, would tend to support the views of the trial council had. Wouldn't it? Okay. Okay. In the district court. The Batson violation, didn't she? Yes, the district court specifically. And she thought that the appellate division's appreciation of that there was not a Batson violation, that there was no prejudice to the defendant, was an unreasonable application of Batson, didn't she? Yes, yes, she did. But what's important here. Excuse me. Doesn't that create a curious situation then, that now you're asking us to reverse it? That, that, that, that the standard that she articulated and seemed to agree with trial council was ineffective. His trial council apparently thought that numbers enough were enough. Brown says that they can be, and Batson says that they can be. How, I just don't understand how this is ineffective. When, when counsel adopted the very standard that you want in the way he conducted himself. Okay. Your honor, the district judge specifically declined to decide the ineffective assistance to counsel portion of the, of the habeas saying it was mooted by her decision. Okay. She found a Batson violation. She said that the understanding of whether there was or was not a Batson violation was unreasonable application. The New York courts had made an unreasonable application, but she said there is a Batson violation, right? Yes, your honor, she did. Did she not then agree with, did she not then agree with trial council? I, I, I, I, I disagree with that your honor, because, because trial council, there was more, there was more that trial council could have shown and a reasonably effective lawyer would have shown it. And he admitted in his sworn statement in the state post conviction that he, um, that he did not know that he could provide that other information. He was not aware of what you're trying to say. You're trying to say this is a Batson violation. And I'm suggesting to you that it's an ineffective assistance to counsel claim because Batson doesn't require that Batson doesn't require that you do numbers plus characteristics. It acknowledges that numbers can be enough. Would you agree with me on that? Yes, that's the federal standard. Excuse me for a second. Excuse me just for a second. Then I'll, then I'll let you, I'll leave you alone. I want to ask you another question. Then your claim is, is that based upon the factual record of this case, a lawyer of reasonable competence would have gone beyond the numbers, not because Batson required it, but because the facts of this case, you mentioned all the, all the people have a favorable law enforcement background and that the facts of this case, a lawyer of reasonable competence would have gone ahead and fleshed out those who are prosecution friendly, but ended up being stricken. Isn't that the case? No, what I'm, what I'm saying is a reasonable lawyer would have presented the evidence that was available to him. All of the evidence that was available to him to show that the, that there was a prima facie case in here. The lawyer did not present all the evidence that was available to him, not because of a strategy to withhold certain evidence, but because of a lack of knowledge of the applicable law that at the first stage of the Batson inquiry, he was supposed to present the evidence that he had, that the prosecutor was acting in a racially discriminatory fashion. Okay. Thank you. I have two, two, this is judge Solomon. I have two quick questions. The first is that with respect to your argument that trial counsel should have proffered information about the pro prosecution proclivities of the African American jurors who were struck, doesn't the the sole white juror that was covered in the record and no one else has presented anyone else besides her was juror Maggio and juror Maggio. He had close people in law enforcement, but she also said that she spent all of her spare time at home with her daughter because her daughter was a way to get a lung slashed. And it's only that attorneys would not want on the jury, a juror who could be called away on an instance notice for a life threatening condition. And if a lung became available for her daughter, you know, the prosecution struck her because the prosecutor had the first strike. If the prosecutor declined to strike her, I'm sure the defense attorney would have struck her. There's no reason to think that she was struck, even though she had long pro law enforcement sentiments. It was clear that she was struck, or at least the record clear that she was struck because of the situation that she had a daughter at home who was waiting to get a lung transplant. All right. And my other question relates to the fact that this is a stripling claim. It's not, this is no longer a Batson claim, right? Batson challenge was already made to the court of appeals. That's correct. Your, it was sent back so that you, the district court could explore whether there was ineffective assistance of counsel, ineffective assistance. In other words, in not making or poorly making a Batson challenge, right? Yes. Yes, your honor. But you seem to be saying that an ineffective assistance claim that relates to a poorly made or not made Batson challenge doesn't require the prejudice prong of Strickland. That seems to be what you're saying. Is that accurate? Okay. It's somewhat accurate. Your honor, what I'm saying is that the prejudice prong is not to show that a different jury would have resulted in. It's not, it's certainly not to show that the verdict at the outcome of the trial, it's simply to show that there would have been a reasonable probability of a Batson hearing prevailing had there been a, had the court gone on to a Batson claim. And at that hearing, the, the, the standard of review would be one of structural error. It's one of these situations that Strickland speaks of where Strickland says, if the, um, if, if the cost of making the prejudice, let me interrupt you. I don't care what the, what the Batson hearing would have looked like. And you agree that there needs to be a showing of prejudice here for this ineffective assistance claim. Correct. I, I believe the showing of prejudice is one of structural error. If you, if you can show that there was a, a, a prima facie case would have been made in this case. Once you show racial discrimination in the selection of the jury, it's structural error and it's not subject to prejudice analysis. And it's certainly not subject to the prejudice analysis of invoked by the state appellate division, which was one of showing that you ultimately ended up with an unfair jury that they said in any event, it is not shown that any Batson violation resulted in an unfair jury. All right. But I think what I teased out of you is a concession that at the very least you would have to show that had effective counsel made the Batson challenge the way you believe they should have, that that would have resulted in a prima facie showing that resulted then in the Batson analysis that went to steps two and three. Is that correct? Yes. Yes, you will. Yes. See, I believe you have to have a reasonable probability that the prima facie case would have been made. And everyone has acknowledged how strong the statistics were in this case. It wouldn't get, and, and the Supreme court standard says that making the step one is not an onerous burden. It's step one. You've already lost that one, right? You've already lost that one. I mean, the, the numbers were provided the last time and this, a different panel, but this court said that's not a Batson. That's not a, an error on the Batson, right? Yes. And I'm saying that with the additional information that the attorney should have presented, had he been effective counsel with that additional information, it would have gotten past the threshold of a prima facie case. All right. Okay. I think we've gone over for you, but I know you reserved some time for rebuttal. So now we'll hear from Ms. Morris for the appellee. May it please the court. My name is Deborah Morris and I represent respondent on this appeal. I just, I'll just begin by saying that everything that the judge went judges, winter and Wesley, I think who addressed the issue of what the effect is of this court's prior decision on the Batson. I agree entirely as I understand what the judges were saying that this court said for the purpose that at this stage, at this posture, for the purposes of the habeas proceeding, there is no Batson. There was no Batson violation. This court did find that for purposes of the habeas, there wasn't a violation because there was not, the appellate division did not apply an unreasonable application of Batson. And so, and the, and the other, I guess the point that flows from that is that at this point, really the issue is purely ineffective assistance. And it's definitely, I understand it's ineffective assistance based, assistance based on counsel's supposed mishandling of a Batson proceeding, but still it's the claim is ineffective assistance. And when it's, when the claim is ineffective assistance, it's a government, whether it's based on mishandling of something that's been characterized as a structural error or not a structural error, still the standard is claim the ineffective assistance standard is, is Strickland, which of course, as the court knows, has two prongs, one of which is prejudice. So on the issue of whether prejudice is required or presumed, there's no question that here prejudice was required. I mean, the showing of prejudice was required in order to prevail. Now it could, the issue could have been resolved purely based on performance, because if the performance was, was sufficient, then there would be no need for any court, including this court to reach the issue of prejudice. But I do think it's worthwhile to note that there is no authority whatsoever for the proposition that a showing of prejudice is unnecessary, where there's a claim of ineffective assistance based on counsel's handling of the Batson proceeding. There's no authority from this court. And there's certainly... Excuse me, you have one more minute. Oh, I'm sorry. Thank you. And there certainly is no authority from the Supreme Court. In fact, in Weaver, the Supreme Court made clear that even in a case of a structural error, by their term, terminology, prejudice is still required. Now, the notion of having excluded so-called pro-prosecution jurors who are not black, in this case, the idea that, well, the people excluded the non-black juror because she had, there was an issue in her family with sickness. That's one interpretation, one inference, but that's no more reasonable than the interpretation, than the inference, that the juror was excused because there was no focus on what the petitioner is saying. Certainly in our brief, we've outlined at various stages, briefs to this court, the prosecution view is that these were not the dream jurors that the petitioner paints them as, that there was not some way to lump them all together as pro-prosecution jurors. These were not law enforcement people, from the prosecution's point of view. But in the end, I mean, this relates to the performance issue, but it also relates to the ineffective assistance performance issue. The point ultimately is that both the state hearing court and the district court ruled that the performance was not rendered deficient by the lack of additional Batson arguments, and this ruling should be upheld because of the nature of the argument, and both the state appellate division and the district court ruled that there was no prejudice, and that determination should be upheld as well, although again, this court need not even reach the issue of prejudice, since there's no Batson violation, and there's no deficiency in counsel's performance, and there's no need to reach the issue of prejudice. Now, in this case, petitioner points to the fact that the appellate division didn't reach the issue of performance, but Strickland itself says, as the district court pointed out, that if the issue can be, if a Strickland issue can be resolved on prejudice alone, if that's easier, then there's, you know, go right ahead and do it on that, and that's, there's no reason to think that that's not what happened here, that the appellate division resolved it easily by pointing to the fact that there was no showing of prejudice, and the prejudice here that they, that was considered, and that's appropriate to consider, is whether the Batson application necessarily would have succeeded if the additional argument had been made, and also whether, in fact, as a result of the, but for the so-called omission, you know, of the additional arguments, whether that resulted in an unfair jury, or an unfair, fundamentally unfair trial, and neither one of those things happened here, and those... All right. Let me, let me, let me stop you. I'm sorry. Let me stop you, Ms. Morse. I'm sorry. So let me just give the panel an opportunity to ask some questions before we run out of time. Okay. Judge Winter, do you have any questions for Ms. Morse? No, I don't. No, thank you. All right. And Judge Wesley? No, I'm good. Thank you. I guess I'll just ask very briefly with respect to the first prong of Strickland. Do you agree with the characterization of the record by your adversary that there's no other instance of a non-black juror who had these so-called prosecution tendencies being struck besides Maggio? I didn't see one. I'm not saying there wasn't one. I believe the magistrate's report... I don't have that in front of me. I believe the magistrate's report referred in plural, but I remember at the time looking and I'm not sure that I could see anything, so it's possible that it's accurate. I don't know. I don't mean to skirt the issue, but I don't know that it's untrue. It might very well be just that there was that one juror, one non-black juror who shared the so-called pro-prosecution tendencies. But again, okay, so I don't want to go beyond Your Honor's question. All right. But I mean, so what's the... I mean, the prior panel concluded that I guess there's no Batson violation, but they sent it back for a Strickland, for the court to do a Strickland analysis. So what was the point of this hearing then to determine what? What did counsel do wrong that would have enabled a Strickland claim to go forward? It was sent back only because the habeas petition had two separate claims. One was that there was a Batson violation, and the second claim was that the lawyer was ineffective. And because Judge Fela granted the petition based on the Batson violation alone, she never reached the issue of the ineffective assistance claim, claim number two. So since that was remaining, it went back for consideration of that second claim. But as we pointed out, it was, you know, in a sense, it just knocked the foundation out of that claim. This court's decision, you know, knocked that out. But, you know, to the extent that there were, you know, remaining issues, the district judge addressed those remaining issues, found consistently with the state court, gave appropriate deference to the findings. Again, the state court, the hearing, the state court hearing court, as well as the appellate division, made findings on the issue. And so that's why we're here. All right. I would agree that there's, you know, in a sense, these issues have already been resolved. You know, the substance of them, even if not on form. But that is why we're here. I don't know if that answers your honest question. All right. That's fine. Thank you. Any other questions from the panel? Hearing none, then we'll just go back to Mr. Nersey for two minutes of rebuttal. Thank you, Your Honor. Just two very quick things. One, Ms. Morse referred to the Weaver decision in the U.S. Supreme Court. And in Weaver, yes, courtroom closure is a structural issue. But there are exceptions, as the court said, when courtroom closure is allowed. There are never exceptions where racial discrimination in the selection of a jury is allowed. And that was the essence of the Weaver decision. Because there are times when courtroom closure is constitutional, the prejudice on effectiveness, you would have to show that the courtroom would not have been closed in this case. And when opposing counsel spoke about the reasons for the prosecutor exercising the strikes or not exercising the strikes, those reasons were never explored because the court didn't find the prima facie case. And the court didn't find the prima facie case in part or because of the attorney's failure to present all the evidence that would have led to the finding of the prima facie case. Counsel, counsel, counsel, let me ask you just quickly. To find counsel in this case ineffective, we have to find a Batson violation, do we not? Your Honor, I think you would need to find that with the additional information, there's a reasonable probability that would have created the prima facie case that would have taken it to the next two stages of the Batson procedure. Oh, well, now, wait a second. A prima facie case doesn't establish a Batson violation. It requires it to go to the next two stages. But you're saying that it becomes structural error when there's a Batson violation. So I ask you to find him ineffective. Don't you have to go beyond just the fact that he made a prima facie case? Don't you have to go to that indeed there was a Batson violation? Because you're trying to invoke structural error, are you not? Your Honor, there would have been a reasonable probability of prevailing at the Batson hearing had it gotten over that prima facie case threshold which the attorney could have established. Because based on the record, there was no basis for the prosecutor to have struck these jurors other than their race. Does that strike you as a reasonable application of Batson? Yes. Let me ask you this. Were we wrong the first time when we said that the appellate division's determination of prejudice was not an unreasonable application of Batson? The appellate division's determination of prejudice on the ineffective assistance of counsel issue wasn't before this court on the original appeal. It was just the appellate division's determination. It certainly was before this court originally as to whether Judge Fela's conclusion that there was a Batson violation was done by the right standard. We said that the standard is whether there was an unreasonable application of clearly established constitutional law. Correct? Your Honor, I think there may be some confusion. There were two appellate division decisions in this case. There was the one on direct appeal. I'm aware of that. There were two. There was the one on direct appeal that determined there was no Batson violation. Then there was the one in the post-conviction proceeding that determined that there was no ineffective assistance of counsel. The one that was on the two... On the ineffective assistance of counsel claim, the one that we're talking about right now, you want us to say that the state was wrong in using prejudice because Batson violations are structural errors. Correct? Yes, Your Honor. Therefore, we must conclude that not only was he ineffective, but that there was indeed a Batson error. Do we not? Your Honor, I believe you have to conclude there's a reasonable probability that the prima facie case would have been met. Because to go beyond that... The prima facie case? It's impossible to ever find ineffective assistance on the attorney's failure to create the prima facie case because there was no... No, not at all. This is attorney's ineffectiveness with regard to failing to keep out certain evidence and then you do harmless error analysis and other things. But you want the benefit of a structural error here. And I'm suggesting to you that without a determination that there was indeed a Batson error, which gets you to structural problems, I think you're stuck with prejudice. Your Honor, I believe the prejudice is reasonable probability of a prima facie case because otherwise it would be impossible. This is Judge Sullivan. Even if he lost? Okay. I'm done. Here's my question. I mean, you're saying that effective counsel would have proffered these additional arguments that you're making now about the striking of pro-prosecution African-American jurors, right? Yes, Your Honor. But the trial judge was there for all of it, right? Yes, Your Honor. But the trial court was never confronted with that being the reason for finding the Batson violation. But the trial court was there and saw the statements made by each of the jurors. So in other words, you're saying it was ineffective for counsel not to spell out to the judge what the judge himself had already seen. Okay. What I know is the judge kept telling the attorney, you need to give me more than numbers, and the attorney kept failing to give more than numbers. And the attorney had something that could have been presented. I don't know if the judge was aware of it or unaware of it, but there was information, evidence the attorney could have presented and didn't. And in the state post-conviction proceeding, he swore that he failed to present it because he did not know that was part of his burden in creating a prima facie case. But if he had known it and just figured, well, the judge has seen everything I saw, this is the end of the story, would that still be ineffective? Pardon me, Your Honor? Not meet the first prong of Strickland? A tactical decision to not continue with arguments like the ones that you're making here because there was an awareness that the judge had seen it. Would that be deficient performance? There could be no tactical reason for not presenting evidence that exists, but we don't have to look at that here because the attorney swore that it wasn't tactical. The attorney swore he didn't know that he had to do it, and that's never been rebutted anywhere, that that was his reason for not presenting it, that he didn't know he was supposed to. All right, but you say presenting evidence. You just mean making an argument, right? Yes, presenting, providing to the trial court the fact that these jurors had articulated pro-prosecution positions and that the prosecutor nonetheless struck them because they were African American jurors. All right. Any other questions from the panel? No. Okay, hearing none, we'll reserve decision. Thanks very much to both of you and to all the advocates today. Well argued. We have one other case that is on submission, Lee v. Saul, so we'll now adjourn. Thanks very much, folks, and stay healthy.